**City of CLEVELAND, Appellee,**

**v.**

**MURAD, Appellant.**

[Cite as *Cleveland v. Murad* (1992), 84 Ohio App.3d 317.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60478.

Decided Oct. 19, 1992.

*Lynn A. McLaughlin,* Assistant City Prosecutor, for appellee.
*Leroy Murad,* for appellant.

MATIA, Chief Justice.

Defendant-appellant appeals the verdict of the Cleveland Municipal Court, which found him guilty of resisting arrest. Appellant assigns two errors for review. Based on the reasons adduced below, we affirm.

## STATEMENT OF THE FACTS

On April 6, 1990, an altercation took place between Anthony Skufca and defendant-appellant Mark Murad. Testimony at trial established the following. Murad and Skufca were both enrolled in chemistry classes at Cleveland State University. On April 6, Skufca was in the Science Research Building at Cleveland State University. Seeing Murad sitting at a table in the reading room of the building, Skufca approached Murad and asked him if he was taking Chemistry IV. Appellant Murad responded by jumping up and yelling, "Are you mocking me?" Appellant then pushed Skufca against the wall. Skufca slid down the wall and appellant Murad stood over him. Skufca testified that he then pushed appellant off him and a struggle ensued. Murad got Skufca in a headlock so that he could not breathe. Skufca testified that appellant screamed at him the entire time.

When Murad released Skufca, Skufca scrambled into the lounge area. Skufca then called campus police and reported the incident. Skufca then went to the campus police station, had photographs taken of himself and pressed charges

against appellant. Skufca gave the campus police a description of appellant and identified him in a photo lineup.

Murad testified that Skufca came up to him in the reading room, taunted him and then slapped him under his chin, and subsequently a struggle ensued.

Officer Akagi of the Cleveland State University Police testified that on April 6, 1990 he received a dispatch about an assault at the Science Research Building. Officer Akagi further testified that he responded to the dispatch, spoke to Skufca and got a description of Murad, which he then broadcast over the radio.

Officer Edelman of the Cleveland State University Police testified that he responded to the radio broadcast. While looking for Murad, a fellow student pointed him out. When Officer Edelman approached Murad and attempted to question him, Murad jerked his arm away from the officer and began to fight with him. Officer Edelman testified that he told appellant two or three times that he was under arrest, but appellant continued to resist arrest.

Officer Akagi testified that when he arrived upon the scene, appellant was struggling with Officer Edelman. Officer Akagi told appellant several times that he was under arrest. Appellant refused to cooperate and continued to struggle with the officer. Officer Edelman was finally able to place him under arrest with the assistance of other officers and a civilian.

Appellant testified that he felt that his arrest was illegal and that is why he did not cooperate. Appellant was taken to the Cleveland State University Police Station, where he was booked for assault and resisting arrest.

## STATEMENT OF THE CASE

On April 6, 1990, Murad was charged with assault and resisting arrest in violation of Cleveland Municipal Code 621.03 and Cleveland Municipal Code 615.08.

On April 9, 1990, at arraignment, appellant entered a plea of not guilty to both charges. The case was then assigned to Judge Ronald B. Adrine.

On May 1, 1990, appellant appeared before Judge Adrine but requested a continuance until May 31, 1990.

On May 31, 1990, appellant failed to appear in court and a capias warrant was issued for his arrest.

On June 14, 1990, appellant appeared in court and requested a jury trial. A trial was scheduled for August 15, 1990.

On August 15, 1990, a jury trial was had. On August 17, 1990, appellant was convicted of resisting arrest and found not guilty of assault.

It is from this conviction that appellant timely appeals to our court.

### Assignment of Error I

"The trial court committed prejudicial error by failing to instruct the jury upon the limited right to resist arrest, which instruction was required under the law and facts of this case."

Appellant argues in his first assignment of error that the trial court erred in its jury instructions. Specifically, appellant argues that the court was required to instruct the jury upon the limited right to resist arrest.

This assignment of error is not well taken.

*ISSUE RAISED:* WHETHER THE COURT'S JURY INSTRUCTIONS WERE PROPER

*ISSUE A:* MISDEMEANOR ARREST WAS LAWFUL

Murad argues in his first assignment of error that he was unlawfully arrested and that the officers involved in the arrest used excessive or unnecessary force to arrest him. The court finds this argument meritless.

■ A warrantless arrest for a misdemeanor is valid if the arresting officer is able to reasonably conclude from the surrounding circumstances that an offense has been committed. R.C. 2935.03(A); *State v. Reymann* (1989), 55 Ohio App.3d 222, 563 N.E.2d 749; *Columbus v. Lenear* (1984), 16 Ohio App.3d 466, 16 OBR 548, 476 N.E.2d 1085 (what is required for a valid warrantless misdemeanor arrest is not that the officer have absolute knowledge that a misdemeanor is being committed but, rather, that he be in a position to form a reasonable belief that a misdemeanor is being committed, based upon evidence perceived through his own senses).

■ In *Lenear*, defendant was convicted for permitting her property to be used for the sale of intoxicating liquor, without possessing permits required by Ohio law, a misdemeanor. While the police officers in *Lenear* did not observe defendant personally sell liquor, the *Lenear* court ruled that events which transpired in the police officers' presence were sufficient to form a reasonable belief to ground the warrantless arrest. The court reasoned:

" * * * Here, the arresting officers observed that a dozen persons were drinking alcoholic beverages and playing cards at 4:30 in the afternoon, and that defendant was among the persons on the premises; they were advised by defendant, before she was arrested, that she owned the premises; pursuant to

their search warrant they found a refrigerator and numerous cabinets secured by padlocks; when these padlocks were opened with keys belonging to defendant, an unusually large quantity of alcoholic beverages was found inside the refrigerator and cabinets; a cash box containing $100 was found in one of the padlocked cabinets holding alcoholic beverages; and the officers saw no liquor permits on the premises. From this evidence, a reasonable person could justifiably conclude that he was observing defendant knowingly permitting her premises to be used for the sale of intoxicating liquor or beer, in violation of law." (Footnote omitted.) *Lenear,* at 469, 16 OBR at 551, 476 N.E.2d at 1088.

" * * * In other words, if, based upon circumstances perceivable by his own senses, a reasonable person would be justified in concluding that a misdemeanor is being committed in his presence, then, the warrantless arrest is valid." *Id.* at 468, 16 OBR at 550, 476 N.E.2d at 1088.

In the case *sub judice,* police officers had been summoned to the Science Research Building to investigate an alleged assault. When Officer Akagi responded to the call, he talked with the victim and observed him. The officer testified that the victim "was visibly shaken up a little bit. And physically, he had abrasions and contusions on and about the face—facial area." We find then, that based upon these circumstances perceived by Officer Akagi's own senses, a reasonable person would be justified in concluding that a misdemeanor had occurred. That is to say that although Officer Akagi did not observe the assault, Akagi observed the victim and heard statements that made it possible for him to conclude that on the basis of observing the victim and talking with him and the other witness, probable cause existed to pursue a warrantless arrest of the perpetrator.

In *State v. Reymann, supra,* the Court of Appeals for Summit County held:

" ' * * * R.C. 2935.03(A) prohibits an officer from arresting a person for a misdemeanor offense on the basis of hearsay evidence alone, unless such offense involves violence, domestic violence, theft or illegal drugs.' [*State v.*] *Stacy* [ (1983), 9 Ohio App.3d 55, 9 OBR 74, 458 N.E.2d 403], *supra,* paragraph one of the syllabus.

" 'If an officer does not know of the acts constituting an offense, that offense is not being committed in his presence in respect of the justification of an arrest without warrant. The acts must become known to the officer, at the time of their commission, through his sensory perception, and he must infer that they constitute an offense. * * *

" ' * * * But an arrest is not justified by the fact that the officer has information from other persons which leads him to believe an offense is being committed in his presence; the facts constituting the offense must have been

within his own knowledge.' 5 American Jurisprudence 2d (1962) 721, Arrest, Section 31.

" ' * * * [A]n officer may arrest without warrant when he has reasonable grounds to believe that the person to be arrested has committed a misdemeanor in his presence. However, probable cause for this purpose must be a judgment based on a personal knowledge acquired at the time through the senses, or inferences properly drawn from the testimony of the senses.' *Id.* at 723, Section 32." *Reymann, supra,* 55 Ohio App.3d at 224–225, 563 N.E.2d at 751–752.

In the instant case, after reviewing the facts, it is clear that the alleged assault was not committed in the presence of the officer; however, we find that, from the surrounding circumstances, based upon personal observations and the statements of the victim and Miss Zaniewski, Officer Akagi was able to reasonably conclude that an offense had been committed. It is not necessary for the state to prove that appellant was in fact guilty of the offense for which the warrantless arrest was made. It is only necessary to show that the arresting officer had probable cause to believe that appellant's conduct amounted to an offense. *State v. Reymann, supra; Columbus v. Fraley, infra; State v. Pembaur* (1984), 9 Ohio St.3d 136, 138, 9 OBR 385, 387, 459 N.E.2d 217, 219. Accordingly, the warrantless misdemeanor arrest of Murad was legal.

### *ISSUE B:* WHETHER THE OFFICERS INVOLVED IN THE ARREST USED EXCESSIVE OR UNNECESSARY FORCE

█ Murad relies on *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, to support his contention that he properly resisted arrest. In *Fraley,* the court held:

" * * * [W]e hold that *in the absence of excessive or unnecessary force by an arresting officer,* a private citizen may not use force to resist arrest by one he knows * * * is an authorized police officer * * * whether or not the arrest is illegal under the circumstances." (Emphasis added.) *Id.* at 180, 70 O.O.2d at 339, 324 N.E.2d at 740.

Appellant argues that the police officers involved in his arrest used excessive and unnecessary force and that, therefore, he justifiably resisted arrest. We are not persuaded.

Appellant erroneously relies on *Fraley,* as the *Fraley* court makes clear that the common-law right to resist an unlawful arrest has been recently severely limited. Quoting a New Jersey Superior Court, the *Fraley* court stated that both courts and legislatures were reviewing, and often abandoning, the common-law rule:

" ' * * * [A]n appropriate accommodation of society's interests in securing the right of individual liberty, maintenance of law enforcement, and prevention of death or serious injury not only of the participants in an arrest fracas but of innocent third persons, precludes tolerance of any formulation which validates an arrestee's resistance of a police officer with force merely because the arrest is ultimately adjudged to have been illegal. Force begets force, and escalation into bloodshed is a frequent probability. The right or wrong of an arrest is often a matter of close debate as to which even lawyers and judges may differ. In this era of constantly expanding legal protections of the rights of the accused in criminal proceedings, one deeming himself illegally arrested can reasonably be asked to submit peaceably to arrest by a police officer, and to take recourse in his legal remedies for regaining his liberty and defending the ensuing prosecution against him. At the same time, police officers attempting in good faith, although mistakenly, to perform their duties in effecting an arrest should be relieved of the threat of physical harm at the hands of the arrestee.' " *Fraley*, at 179–180, 70 O.O.2d at 338–339, 324 N.E.2d at 739–740.

The *Fraley* court then concluded that:

"We agree with those courts and legislatures which have chosen to abandon the rule allowing forcible resistance to arrest. We believe it essential that potentially violent conflicts be resolved, not in the streets, but in the courts. Thus, we hold that in the absence of excessive or unnecessary force by an arresting officer, a private citizen may not use force to resist arrest by one he knows, or has good reason to believe, is an authorized police officer engaged in the performance of his duties, whether or not the arrest is illegal under the circumstances." *Fraley*, at 180, 70 O.O.2d at 339, 324 N.E.2d at 740.

Hence, we find that appellant Murad's reliance on *Fraley* is misplaced. A review of the evidence does not show that appellant was privileged to resist his arrest because of excessive or unnecessary force by Officer Edelman. The evidence shows that appellant himself was the cause of the force used in his arrest. Appellant by his own admission established that he resisted arrest so forcefully that it took three police officers and a civilian to subdue him. Such conduct was clearly sufficient to warrant his conviction for resisting arrest.

Accordingly, we do not find that the trial court erred in its jury instruction.

Accordingly, Assignment of Error I is not well taken.

## Assignment of Error II

"The verdict of the trial court was against the manifest weight of the evidence, in acquitting defendant on the first count but convicting him as to the second count."

Appellant argues in his second assignment of error that the trial court erred by acquitting appellant on the first count but convicting him as to the second count. Appellant's argument is without merit.

*ISSUE RAISED:* WHETHER THE VERDICT WAS AGAINST THE MAN-IFEST WEIGHT OF THE EVIDENCE

Appellant contends that it was error for the jury to acquit him of the charge of assault and convict him as to the charge of resisting arrest. Appellant argues in his brief "that the offense of resisting arrest derives its vitality from the claimed offense of assault." We disagree.

The elements of the crime of assault and of the crime of resisting arrest are distinct. The trial court explicitly outlined the elements of assault for the jury and likewise the elements of resisting arrest. The trial court likewise explicitly stated for the jury what burden of proof was needed to find beyond a reasonable doubt all of the essential elements of the offense of assault as well as all of the essential elements of the offense of resisting arrest.

As discussed in Assignment of Error I, the evidence in the instant case was sufficient to establish beyond a reasonable doubt that appellant was guilty of resisting arrest. The arrest of appellant was lawful under R.C. 2935.03. There-fore the jury's verdict was not against the manifest weight of the evidence.

The fact that the jury did not find sufficient evidence to establish beyond a reasonable doubt that appellant was guilty of the crime of assault does not invalidate the jury's verdict. The evidence supports the fact that Officers Edelman and Akagi had probable cause to believe that an assault had occurred and that appellant had perpetrated the assault. As held earlier, it is not necessary for the state to prove that appellant was in fact guilty of the offense for which the warrantless arrest was made. It is only necessary to show that the arresting officer had probable cause to believe that appellant's conduct amounted to an offense. *State v. Reymann, supra; Columbus v. Fraley, supra; State v. Pembaur, supra,* 9 Ohio St.3d at 138, 9 OBR at 387, 459 N.E.2d at 219.

Hence, we find that the trial court had before it competent credible evidence that appellant was guilty of resisting arrest. Accordingly, the verdict will not be disturbed as being against the manifest weight of the evidence. *Cleveland v. Northeast Ohio Regional Sewer Dist.* (Sept. 14, 1989), Cuyahoga App. No. 55709, unreported, 1989 WL 107162; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

Accordingly, Assignment of Error II is overruled.

*Judgment affirmed.*

JAMES D. SWEENEY, J., concurs.

HARPER, J., dissents.

HARPER, Judge, dissenting.

I respectfully dissent from the majority's resolution of this case. Specifically, I find that the trial court's instructions to the jury were deficient in not adequately providing the law needed to determine whether appellant violated Cleveland Municipal Code 615.08. I would have thus sustained appellant's first assignment of error, thereby requiring a reversal and remand of the action for new trial.

Appellant was convicted of violating Cleveland Codified Ordinance 615.08(A), which mirrors R.C. 2921.33, and provides:

"(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of himself or another."

Prior to 1975, a person's right to resist an unlawful arrest was governed by common law. A person had an absolute right to resist an unlawful arrest. *Columbus v. Holmes* (1958), 107 Ohio App. 391, 8 O.O.2d 376, 152 N.E.2d 301.

The common-law rule, however, was restricted by the Ohio Supreme Court in *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735:

" * * * [W]e hold that *in the absence of excessive or unnecessary force by an arresting officer,* a private citizen may not use force to resist arrest by one he knows * * * is an authorized police officer * * * whether or not the arrest is illegal under the circumstances." (Emphasis added.) *Id.* at 180, 70 O.O.2d at 339, 324 N.E.2d at 740.

Appellant asserts in his first assignment of error that the trial court erred in its instructions to the jury by not stating if it finds that excessive force had been used, the defendant was privileged to resist, and it should return a verdict of not guilty. He argues that the jury was denied the opportunity to determine this factual question by not receiving the instruction. Appellant also stresses that there was ample evidence from which to find excessive force used by the officers.

The city responded too simply to appellant's allegation by stating:

"[T]he jury in the case at bar found that the officers did have probable cause to arrest the Defendant; therefore the Defendant did not have the right to resist the lawful arrest."

Missing from this equation is the Supreme Court's caution that a defendant does not have the right to resist a lawful arrest *in the absence of excessive or unnecessary force.*

A criminal defendant has the right to expect that the trial court will instruct the jury on all issues raised by the evidence. *State v. Williford* (1990), 49 Ohio

St.3d 247, 551 N.E.2d 1279. The evidence in the present case included appellant's testimony that Officer Edelman grabbed his arm as the officer told him he was under arrest. Edelman then immediately "yanked" and pulled appellant, eventually pushing him up against a glass window. Appellant testified that he believed Edelman to be "way out of order" at this point. Edelman continued by dragging appellant, tripping him and then pushing appellant to the ground. Appellant then physically reacted to Edelman's actions. It is readily apparent that the majority overlooked this testimony in concluding that the "evidence does not show that appellant was privileged to resist his arrest because of excessive or unnecessary force by Officer Edelman" and, hence, in concluding that the appellant's reliance on *Columbus v. Fraley* (1975), 41 Ohio St.2d 173, 70 O.O.2d 335, 324 N.E.2d 735, is erroneous and misplaced.

The Seneca County Court of Appeals in *State v. Logsdon* (Dec. 4, 1990), Seneca App. No. 13–89–10, unreported, 1990 WL 197883, recognized other jurisdictions which hold that an officer's use of excessive force in effecting an arrest may amount to an assault against the arrestee, thereby affording the arrestee the right to respond with reasonable force. See *People v. Stevenson* (1972), 31 N.Y.2d 108, 335 N.Y.S.2d 52, 286 N.E.2d 445; *State v. Reinwand* (1988), 147 Wis.2d 192, 433 N.W.2d 27; Annotation (1977), 77 A.L.R.3d 381. In finding that this analysis equally applies under Ohio law, the court stated:

"With an allegation of unnecessary or excessive force in a resisting arrest charge, a defendant attempts to excuse or justify his actions in the classic nature of an affirmative defense, i.e., 'confession and avoidance.' Thus, the defendant effectively admits his resistance, if only to show that it was necessary in order to protect himself from the officer's excessive force. The defense is peculiarly within the knowledge of the defendant because only the defendant can adequately demonstrate to the trier of fact the point at which he felt he had to protect himself from the action of the arresting officer." *Logsdon*, at 5.

The burden of proving unnecessary or excessive force is borne by the defendant, and is proof by a preponderance of the evidence. *Id.*

I agree with the Seneca County Court of Appeals and its interpretation of *Fraley* in its holding that the Supreme Court of Ohio affords an arrestee the right to respond to unnecessary or excessive force by a police officer in effecting an arrest. Therefore, the trial court here prejudicially eliminated this caution from the instruction, precluding the jury from correctly determining whether appellant resisted arrest in the absence of excessive or unnecessary force. The jury was never made aware of the relevance of appellant's testimony. The majority unfortunately falls into the same prejudicial trap by concluding outright that appellant's evidence did not demonstrate unnecessary or excessive force.

This determination is not one for this court but is the responsibility of a jury in the first instance.

There are other facts in this case that add to my unwillingness to affirm appellant's conviction for resisting arrest. First, I am troubled by the fact that appellant was a long-time student at Cleveland State University and his father was a professor there. Nonetheless, the Cleveland State officers, rather than secure an arrest warrant for a misdemeanor based upon the victim's identification of appellant as his alleged assailant, broadcast appellant's description. I fail to comprehend this action when appellant could easily have been approached by any officer with an arrest warrant in hand. Second, it appears that a virtual posse was formed when other officers were called to the scene. I see no justification whatsoever for the arrival of five or six officers to assist in the warrantless misdemeanor arrest of a student. Finally, I am astonished that an attempted warrantless misdemeanor arrest escalated into a battle between several officers and a student, resulting in the severe injury to appellant's knee.

In conclusion, I do not agree that appellant's reliance on *Fraley* was erroneous. The evidence offered by appellant may have allowed the jury to find that the arresting officers' use of force was excessive or unnecessary. However, the jury was precluded from knowing the relevance of appellant's testimony in reaching this conclusion by the trial court's failure to apprise them of the meaning of the evidence. Appellant's first assignment of error, therefore, should have been sustained.